585 P.2d 887

**Johnnie L. NELSON, widow, Clarence Nelson, Deceased, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Adams Insulation, Respondent Employer,**

**State Compensation Fund and CNA/Insurance, Respondent Carriers.**

**Nos. 1 CA–IC 1692, 1 CA–IC 1694.**

Court of Appeals of Arizona,
Division 1,
Department C.

May 11, 1978.

Rehearing Denied July 28, 1978.

Review Denied Sept. 12, 1978.

Davis, Eppstein & Tretschok, P. C., by Dale D. Tretschok and Patrick R. McNamara, Tucson, for petitioner.

John H. Budd, Jr., Chief Counsel, The Industrial Commission of Ariz., Phoenix, for respondent.

Warner & Demaree by Jack C. Warner, Phoenix, for respondent employer.

Chandler, Tullar, Udall & Redhair by William J. Augustine, Tucson, Attorneys for respondent employer and carrier, CNA Ins.

Robert K. Park, Chief Counsel, State Compensation Fund, Phoenix, by George B. Morse, State Compensation Fund, Tucson, for respondent insurance carrier.

## OPINION

WREN, Judge.

The question presented here is whether Johnnie L. Nelson, the petitioner and surviving widow, is entitled to benefits under the 1973 revisions of Arizona's occupational disease law where her deceased husband's injurious exposure to asbestos occurred prior to the revision but his disablement and death occasioned by the exposure occurred after the enactment of the 1973 revisions.

The Industrial Commission's findings and award determined that the Commission was without jurisdiction to consider the petitioner's claim. The award was based on an offer of proof and response filed by the parties, as well as medical and other reports in the Industrial Commission file. We will draw from the same file for the purpose of our review of the jurisdictional question.

Petitioner and Clarence Nelson, the deceased, were married in 1926. During most of his life, Clarence Nelson worked with materials containing asbestos. His last period of employment, which ended in 1971, was primarily with respondent Adams Insulation. In 1972 he retired from the Insulation Workers Union.

In March of 1975 Clarence Nelson sought treatment for a condition which his treating physician described as shortness of breath. Lung cancer was suspected and exploratory surgery was undertaken on March 25, 1975. The surgery revealed extensive fibrous tissue in the left thorax together with marked thickening of the surface of the lung and the membrane lining the thorax as well as a total atelectasis of the lower lobe of the left lung. A biopsy of the fibrous tissue revealed the presence of asbestos particles. Surgical procedures were undertaken in an attempt to clear the lung and chest cavity of the fibrous tissue and to re-expand the lower left lung. Subsequently complications developed, including air leaks and emphysema, and after several days in this condition Clarence Nelson suffered a cardiac arrest and died on April 5, 1975. The final diagnosis was left fibrothorax due to asbestosis with pleural effusion. The deceased expired due to complications of the surgery necessitated by that condition.

On May 9, 1975 petitioner filed a claim for workmen's compensation benefits alleging her husband's death was causally related to his employment with respondent employer. On December 23, 1975 respondent insurance carrier, State Compensation Fund, issued a notice of claim status denying the claim. Petitioner filed a request for hearing and a motion to join interested parties. On June 28, 1976 the hearing offi-

cer issued an order joining respondent insurance carrier CNA Insurance. A formal hearing was scheduled, but prior to that time an offer of proof and response was submitted at an informal conference in lieu of formal hearing. On October 7, 1976 the hearing officer issued his findings and award dismissing the widow's claim for lack of jurisdiction. After the award was affirmed on review petitioner brought a Special Action—Industrial Commission in 1 CA–IC 1692. Additionally, respondent carrier CNA/Insurance issued a notice of claim status denying the claim on behalf of respondent employer. Petitioner's request for hearing directed to that notice of claim status was dismissed as moot by the hearing officer's finding and award entered November 10, 1976. Petitioner perfected her review from that award in 1 CA–IC 1694. We will consider the two cases together for purposes of review.

█ Although the 1973 revision of the Workmen's Compensation Act has abrogated much of the need to distinguish "occupational disease" from other work-related causes of disability or death,[1] we believe that the asbestosis suffered by the deceased in this case must be considered an occupational disease. Relying on *Marquez v. Industrial Commission,* 110 Ariz. 273, 517 P.2d ˙1269 (1975), petitioner argues that since decedent's death resulted from complications of surgery, including cardiac arrest, the condition should be considered a work-related injury not subject to any restrictions that may apply in the case of occupational disease. In *Marquez,* the Arizona Supreme Court permitted recovery under the Workmen's Compensation Act by a workman who suffered cardiac failure caused by strain placed on his heart from a long-standing fibrotic condition of his lungs. Subsequent to the *Marquez* decision, however, the Supreme Court determined that

when a "petitioner's specific disability is compensable as an occupational disease, he is excluded from compensation under the Workmen's Compensation Law." *Featherman v. Industrial Commission,* 112 Ariz. 52, 54, 537 P.2d 922, 924 (1975).

This Court, applying the *Featherman* standard in subsequent cases has found compensability exclusively within occupational disease law when disability or death is caused primarily by a disease specifically compensable as an occupational disease. *See Torrez v. Industrial Commission,* 25 Ariz.App. 391, 543 P.2d 1148 (1975); *State Compensation Fund v. Joe,* 25 Ariz.App. 361, 543 P.2d 790 (1975); *State Compensation Fund v. Yazzie,* 25 Ariz.App. 89, 541 P.2d 415 (1975). Asbestosis was a specifically enumerated occupational disease prior to the 1973 revision, A.R.S. § 23–1102(2), as amended 1968, and carries special restrictions under post-1973 provisions, A.R.S. § 23–901.02, as amended 1973.[2] Under the mandate of *Featherman* and subsequent cases, the deceased's condition of asbestosis was the primary cause of death and must be considered an occupational disease.

At the time of the deceased's last employment the law pertaining to occupational disease provided in A.R.S. § 23–1107(B)(3):

"No compensation shall be paid for death from silicosis or asbestosis unless the death results within two years from the last day upon which the employee actually worked for the employer against whom compensation is claimed, except in those cases where death results during a period of continuous total disability from silicosis or asbestosis for which compensation has been paid or awarded, or for which a claim, compensable but for such death, is on file with the commission. In such cases compensation shall be paid if death results within five years from the last day upon which the employee actual-

---

1. The 1973 revision includes occupational disease in the definition of "personal injury by accident arising out of, and in the course of employment," A.R.S. § 23–901(9)(c), but places special restrictions on claims arising out of conditions determined to be occupational disease, A.R.S. § 23–901.01—901.05.

2. A.R.S. § 23–901.02, as amended 1973, limits liability for asbestosis to the employer in whose employment the employee was last exposed to harmful quantities of the injurious substance during a period of two years or more.

ly worked for the employer against whom compensation is claimed."

The hearing officer, citing *State Compensation Fund v. Stanke,* 22 Ariz.App. 74, 523 P.2d 801 (1974), and reasoning by analogy to A.R.S. § 23–1064(B), which fixes dependency as the "date of the injury", determined petitioner's claim must be governed by the law applicable at the time of the deceased's last injurious exposure to asbestos. In *Stanke,* we held that death benefits which were increased after an employee's injury, but prior to his death were not available to the employee's dependents.

> "The second portion of subsection B, 23–1064, does not deal with the time for the determination of the status of dependency, but rather proceeds one step further—the status of dependency having been determined, the statute next provides that the dependent's rights to death benefits are also fixed as of such time. From the foregoing it would appear that the contingent right to a death benefit for burial expenses in an amount not to exceed $300 came into existence at the time of the decedent's injury, and in the language of A.R.S. § 23–1064B, the right became 'fixed as of such time. . . .'"

22 Ariz.App. at 75–76, 523 P.2d at 802–03.

The hearing officer's application of *Stanke,* to find that the widow's claim in this case is governed by the pre-1973 occupational disease law, presupposes that he correctly determined that the "date of injury" was the date of the deceased's last injurious exposure to asbestos. However, a review of occupational disease law both before and after the 1973 revisions indicates that the "date of injury" in occupational disease cases has always been treated as the date of disablement or death. Former A.R.S. § 23–1224(A)(1) required a claim based on asbestosis be filed within "one year after the employee *first becomes disabled.*" Former A.R.S. § 23–1107(A)(3) and (B)(3) provided benefits where disablement or death occurred within two years from the date of the last employment. Former A.R.S. § 23–1265(A)(1) determined the dependency status of a spouse at the time of the employee's death, "provided the mar-

riage did not occur subsequent to the date of disablement."

Under the 1973 revisions, an occupational disease claim is subject to the same requirements as any other work-related claim. A.R.S. § 23–1061(A), as amended 1973, provides in part:

> "[N]o claim for compensation shall be valid or enforceable unless the claim is filed with the commission by the employee, or if resulting in death by the parties entitled to compensation, or someone on their behalf, in writing within one year after the injury occurred *or the right thereto accrued.*" (Emphasis added.)

Similarly, other disabling conditions of gradual onset have been held compensable when the claim was timely filed after the date the claimant, through the exercise of reasonable diligence, discovered the relationship between his condition and his employment. *Mead v. American Smelting & Refining Company,* 1 Ariz.App. 73, 399 P.2d 694 (1965).

▮ The inclusion of occupational disease within the Workmen's Compensation Act was not intended to create additional bars to legitimate claims based on occupational disease. Defining "date of injury" as the date of last injurious exposure in applying A.R.S. § 23–1064(B), which is now applicable to occupational disease claims, would effectively bar all widows' claims for death benefits where the disease is discovered after the 1973 revisions but exposure occurred before 1973.

▮ We find no justification for defining "date of injury" in occupational disease cases as the last date of injurious exposure, since pre-1973 occupational disease law viewed the date of disablement or death as the date triggering the time periods for filing claims. Current law provides for the filing of a claim "within one year after the injury occurred *or the right thereto accrued.*" A.R.S. § 23–1061(A), as amended 1973. We therefore hold that as with other conditions of gradual onset, the "date of injury" in an occupational disease claim must be viewed as the date the claimant, in

the exercise of reasonable diligence, discovers a relationship between a disabling condition and employment.

 In the case before us, the facts upon which the hearing officer based his award indicate that the deceased developed a disability related to shortness of breath shortly prior to his death. His treating physicians were unable to diagnose his condition as asbestosis prior to exploratory surgery and biopsy of fibrous tissues; in fact, a tentative diagnosis of carcinoma had been made. A claimant under such conditions cannot be held to a higher standard of diligence than the physicians treating him in discovering the relationship of his condition to his employment. *Mead v. American Smelting & Refining Company.* Based on the circumstances of this case, we are of the opinion that petitioner's rights as a dependent did not become fixed at the time of the deceased's last injurious exposure to asbestos, but accrued at the time of his disablement from the disease, which was followed closely by his death. The widow's claim was therefore timely filed pursuant to A.R.S. § 23–1061, as amended 1973, within one year after the injury occurred or the right thereto accrued.

The award of the Industrial Commission dismissing petitioner's claim for lack of jurisdiction in 1 CA–IC 1692 and the award dismissing request for hearing in 1 CA–IC 1694 are set aside.

DONOFRIO, P. J., and SCHROEDER, J., concur.