947 P.2d 1368

**In re ABRAHAM F.**

**No. 1 CA–JV 97–0042.**

Court of Appeals of Arizona,
Division 1, Department B.

Nov. 4, 1997.

As Amended Nov. 6, 1997.

Richard M. Romley, Maricopa County Attorney by Diane E.W. Gunnels, Phoenix, for Appellee.

Dean W. Trebesch, Maricopa County Public Defender by. Susan G. White, Mesa, for Appellant.

OPINION

McGREGOR, Judge.

The issue raised in this appeal is whether Arizona Revised Statutes Annotated (A.R.S.) section 8–241.O authorizes a juvenile court judge to order that the Arizona Department of Public Safety accept a juvenile's fingerprint records as part of the agency's automated fingerprint identification system (AFIS) when the juvenile's offense would not rise to the level of a felony if committed by an adult. We conclude the statute does not confer such authority and vacate a portion of the juvenile court's order.

I.

On February 13, 1996, the juvenile court adjudicated the juvenile delinquent after he admitted to a charge of criminal damage, a misdemeanor offense. The court placed him on probation and ordered him to complete eighty hours of community service. On two subsequent occasions, the juvenile court continued the juvenile on probation after he admitted violating his probation by shoplifting, a misdemeanor offense, and by failing to complete his community work hours.

Two petitions filed in December 1996 charged the juvenile with violating his probation by compiling seventeen unexcused absences from school and committing shoplifting, a class 1 misdemeanor. At a combined adjudication/disposition hearing held on February 14, 1997, the juvenile court accepted the juvenile's admission to an amended count of attempted shoplifting and adjudicated him delinquent. The court ordered that he be continued on probation but added several special probationary terms, including a requirement, based upon A.R.S. section 8–241.O (Supp.1996), that his fingerprints be entered into AFIS within one week.

The juvenile subsequently moved the juvenile court to strike the fingerprint requirement. Following a hearing held on March 10, 1997, the court denied the motion. The court reasoned that although A.R.S. section

8–241.O does not require a court to submit to AFIS the fingerprints of juveniles adjudicated on misdemeanor charges, the statute does not prohibit such an action. Recognizing that the court's previous efforts had not deterred the juvenile from violating the terms of his probation and the law, the court found it "appropriate to add such as a condition of probation so the juvenile will realize if he commits other offenses his fingerprints being on file will make it easier for the police to identify him. Consequently, this requirement the legislature has established ... on felony offenses, can have a rehabilitative effect and be another tool to persuade the juvenile to not violate the laws and the rights of other people."

The juvenile filed a timely notice of appeal from the juvenile court's disposition. This court stayed execution of the fingerprinting order pending disposition of the appeal.

## II.

The legislature established AFIS in 1990 "for the purpose of retaining fingerprint files to be used by the department [of public safety] and other authorized criminal justice automated fingerprint identification sites to make fingerprint identifications for criminal justice and noncriminal justice purposes specifically permitted pursuant to law." A.R.S. § 41–2411.A (Supp.1996). The legislature also appropriated funds to establish, operate, and administer the system. A.R.S. § 41–2414. As enacted, the statute applied only to the criminal justice system and did not include juvenile offenders among those whose fingerprint files were submitted to AFIS. In 1996, however, the legislature enacted A.R.S. section 8–241.O, with an effective date of January 1, 1997. That statute provides in pertinent part:

> If a juvenile has been adjudicated delinquent for an offense that if committed by an adult would be a felony, the court shall provide the department of public safety

Arizona automated fingerprint identification system established in § 41–2411 with the juvenile's fingerprints, personal identification data and other pertinent information.[1]

The juvenile argues that the clear language of the statute limits the use of AFIS for juveniles to those who are felony-level offenders. Because he committed only misdemeanor offenses, he asserts, the juvenile court committed an error of law and abused its discretion in ordering that his fingerprints be provided to AFIS.

The state responds that "the statute only *requires* the juvenile court to order AFIS fingerprinting for felony-level juvenile offenders" but that nothing in its language *prohibits* the court from requiring that AFIS accept and retain fingerprint records of juvenile misdemeanor-level offenders. The state contends that the juvenile court thus had discretion to order fingerprinting to "aid in the juvenile's rehabilitation."

■ We agree with the state that a court can order fingerprinting as a condition of a juvenile's probation. However, we agree with the juvenile that the statute permits *submitting juvenile fingerprint records to AFIS* only for felony-level juvenile offenders.

■ In interpreting a statute, we look first to the language of the statute. *Matter of Maricopa County Juvenile Action No. JA 33794*, 171 Ariz. 90, 93, 828 P.2d 1231, 1234 (App.1991). In enacting section 8–241.O, the legislature specifically limited the class of juvenile offenders whose fingerprint records are to be maintained by AFIS to those juveniles who have been "adjudicated delinquent for an offense that if committed by an adult would be a felony...." *See* A.R.S. § 8–241.O. When a statute enumerates the subjects upon which it is to operate, we will construe it as excluding from its effect all subjects not specifically mentioned. *Inspira-*

1. The statute limits access to and dissemination of records submitted pursuant to subsection O:

> Access to fingerprint records submitted to the department of public safety Arizona automated fingerprint identification system pursuant to subsection O of this section shall be limited to the administration of criminal justice as de-

fined in § 41–1750. Dissemination of information from the Arizona automated fingerprint identification system shall be limited to the name of the juvenile, juvenile case number, date of adjudication and court of adjudication.

A.R.S. § 8–241.P (Supp.1996).

tion Cons. Copper v. Industrial Comm'n, 118 Ariz. 10, 12, 574 P.2d 478, 480 (App.1977). In this instance, the legislature included one specifically-defined class of juvenile offenders; the language of the statute gives no indication that this court should expand the classification to include other juvenile offenders.

The legislative history of the statute confirms that the legislature intended to limit the statute's scope. *Dupnik v. MacDougall,* 136 Ariz. 39, 42, 664 P.2d 189, 192 (1983). The first version of this amendment, as introduced in the Arizona House of Representatives, provided that misdemeanor-level juvenile offenders also would be fingerprinted for inclusion in the AFIS system. The proposed amendment read in part: "If a juvenile has been adjudicated responsible for a felony *or a class 1 misdemeanor* the court shall provide the department of public safety ... with the juvenile's fingerprints, personal identification data and other pertinent information." H.R. 2399, 42d Leg., 2d Reg. Sess. (Ariz. 1996) (emphasis added). However, the legislature omitted the misdemeanor classification from the final version of the bill. The statute's history thus confirms that the legislature intended to limit the statute's application to the defined class of juvenile offenders.

Because A.R.S. section 8–241.O does not authorize the court to submit to AFIS fingerprint records of misdemeanor-level juvenile offenders, the juvenile court acted without authority in ordering that the juvenile be fingerprinted for entry into AFIS.

### III.

We vacate that portion of the juvenile court's order that requires the juvenile's fingerprints be submitted to AFIS. We affirm those portions of the juvenile court's order adjudicating the juvenile delinquent and imposing all other terms and conditions of probation.

PATTERSON, J., concurs.

LANKFORD, Presiding Judge, dissenting.

I respectfully dissent from the majority opinion. My reasons are similar to those I expressed in my dissent in a similar case, *In the Matter of Appeal in Maricopa County No. JV–508801,* 183 Ariz. 175, 901 P.2d 1205 (App.1995).

The existence of a provision requiring fingerprint identification of serious juvenile offenders does not determine the issue here. The fact that the Arizona Legislature chose to *require* fingerprints for felony type offenses does not mean that it also chose to *forbid* fingerprints when the offense is a lesser one. The statute, section 8–241(O), is simply silent on the question.

Nor do I find the legislative history of section 8–241(O) helpful. That the legislature omitted a prior provision requiring fingerprints from juveniles who had committed class 1 misdemeanors reveals only the Legislature's intention regarding which fingerprints were to be *required.* But no one involved in this case contends that this juvenile's fingerprints were required to be obtained. Instead, the juvenile court ordered them as a condition of probation in the exercise of its discretion.

The issue is thus not whether the statute requires that the fingerprints be taken, but whether the juvenile court *may* order fingerprint identification. The answer to that is, for two reasons, quite clearly "yes." First, that result is entirely consistent with the criminal records statutes. Second, the juvenile court has that authority under the statute dealing with juvenile probation.

Arizona's criminal records statutes contemplate the receipt and retention of records such as the fingerprints involved here. The Department of Public Safety (DPS) is the central repository for various criminal history and criminal justice information. A.R.S. § 41–1750(A). This includes the fingerprints of arrestees of both felony and misdemeanor offenses. A.R.S. § 41–1750(A)(1).

Moreover, the legislature directive to DPS is broad, not restrictive. The DPS has a generous mandate to collect useful information, A.R.S. § 41–1750(A)(2), and to encourage its statewide exchange. A.R.S. § 41–1750(A)(9).

AFIS is a part of the role of DPS as the central repository of criminal justice informa-

362

tion. *See* A.R.S. §§ 41–1750(A)(11), 41–2413. AFIS is simply a computerized version of the DPS fingerprint database. Its purpose is to render fingerprint checks more efficient by avoiding manual inspection of fingerprint cards, thereby aiding the resolution of unsolved crimes. Minutes of the Senate Committee on the Judiciary (January 9, 1990); Minutes of the House Committee on the Judiciary (March 26, 1990).

Nothing in these statutes suggests that the Legislature intended to exclude from AFIS the fingerprints of a juvenile misdemeanant. The fingerprint record of a juvenile or adult arrested for a misdemeanor is sent to DPS and kept on a fingerprint card. AFIS is the computerized version of the card file. There is no apparent reason for concluding that the same record, required to be kept on paper, cannot be maintained on computer. That would not prevent all access to the record, but would merely hamstring law enforcement by preventing efficient access. Such a result is plainly contrary to the legislative purpose of the criminal justice records statutes.

The second reason that the juvenile court's order should be affirmed is that it was authorized by statute. The Legislature has given broad authority to impose conditions of juvenile probation. By statute, the juvenile court "may enter judgment as follows: ... 2. It may award a delinquent child: ... (b) to a probation department, *subject to such conditions as the court may impose.*" A.R.S. § 8–241(A)(emphasis added). Thus, while section 8–241(O)—relied upon by the majority—governs what the court *must* do, section 8–241(A) governs what the court *may* do.[2]

This statutory authority is enough to permit the court to order fingerprints or any other rational condition of probation. As I observed in my dissent in the prior case, which involved DNA testing:

> Indeed it is settled that the juvenile court has very broad discretion to impose conditions of probation. The court's disposition of juveniles is reviewed only for abuse of discretion. *In the Matter of Appeal in Maricopa County Juvenile Action No. JV–128676*, 177 Ariz. 352, 353, 868 P.2d 365, 366 (App.1994). Specifically, "[a] condition of probation which does not violate basic fundamental rights and bears a relationship to the purpose of probation will not be disturbed on appeal." In the Matter of Appeal in Pima County Juvenile Action No. J–20705–3, 133 Ariz. 296, 298, 650 P.2d 1278, 1280 (App.1982).

183 Ariz. at 179, 901 P.2d at 1209.

The majority vacates not the directive that fingerprints be taken, but only the part of the juvenile court's order that AFIS act as their repository. I see no persuasive basis for this holding. As discussed above, no statute expressly forbids the receipt by AFIS of the fingerprints of a juvenile who has committed a misdemeanor. Nor do I discern any reason for the courts to forbid it.

The executive branch has made no complaint whatever about the court's transmission of the fingerprint record. No argument is made that the record would be burdensome to maintain or otherwise troublesome to the executive branch. No separation of powers issue was raised by the juvenile, and none appears to exist.[3]

---

**2.** I agree with the majority that section 8–241(O) "exclude[s] from its effects all subjects not specifically mentioned." (Opinion at 1369). This merely means, however, that this provision did not *mandate* the transmission of fingerprints of juvenile misdemeanants to AFIS. The provision is completely silent on whether such fingerprints *may* be sent to AFIS, and that is the issue here.

**3.** The juvenile suggests that some formal agreement is necessary to authorize the juvenile court and the executive branch to cooperate in this way. No authority is cited for this proposition, and I am unaware of any statutory or constitu-

tional requirement of a written agreement before the branches of government may cooperate with one another. The juvenile also suggests that, when information is disseminated from AFIS about him, he might be mistaken for a felony juvenile offender because only felony offenders' records are otherwise included. This is not only speculation, it does not logically follow. If today we were to allow juvenile courts to send fingerprint records to AFIS, then the database would include both felony and misdemeanor level offenders, and a user of the database would have to inquire further—or AFIS would inform users—about the nature of the offense.

No argument is made here that the juvenile court's order is irrational or violates fundamental rights. The juvenile court acted within its broad discretion in ordering the fingerprint and its transmission to AFIS as a condition of probation. The majority's holding means that the fingerprint can be taken and kept on file at DPS, but not placed on the DPS computer. Seeing no justification for that result, I must dissent from it.